[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-12131

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 17, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00258-CV-WDO-5

ALICIA ALLEN, BARBARA ANDREWS, MELISSA BRAXTON, PATRICIA
BROWN, SHIRLEY BROWN, CAROLYN FINNEY, NORARENE GILBERT,
VERONICA JACKSON, VERA LONG, JAMES MAYS, SYLVIA PETTIGREW,
EARLINE SCOTT, LAROSE SMITH, PATRICIA STEWART, ELEANOR
WELCH, ESSIE WILLIAMS, DOROTHY WOODFORD, et al., All individually
and on behalf of all other similarly situated individuals,

Plaintiffs-Appellants,

versus

THE BOARD OF PUBLIC EDUCATION FOR BIBB COUNTY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(August 17, 2007)**

Before BIRCH and PRYOR, Circuit Judges, and COVINGTON,[*] District Judge.

_____

[*] Honorable Virginia M. Hernandez Covington, United States District Judge for the
Middle District of Florida, sitting by designation.

COVINGTON, District Judge:

Plaintiffs brought this action against Defendant, the Board of Public Education for Bibb County, to recover for violations of the Fair Labor Standards Act. The district court granted summary judgment in favor of the Board, and this appeal followed. For the reasons set forth below, we affirm the district court's decision in part and reverse in part.

## I. BACKGROUND

Plaintiffs are Defendant's employees or former employees. They are or were bus drivers, bus monitors or aides, paraprofessionals, secretaries, and custodians. Plaintiffs claimed that the Board failed to pay overtime wages and failed to pay the appropriate "regular rate" of pay in violation of the Fair Labor Standards Act. The bus drivers and monitors moved the district court for partial summary judgment, claiming that the Board's methodology for computing their regular rate of pay, and for computing overtime in general, violated the FLSA. The Board moved for summary judgment on all of Plaintiffs' claims and argued that its practices were in compliance with the FLSA.

The district court denied the motion for partial summary judgment filed by the bus drivers and bus monitors and granted the Board's motion for summary judgment. All plaintiffs now appeal the district court's grant of summary

2

judgment and raise the following issues: (1) whether the district court erred in granting the Board's motion for summary judgment in connection with the claims of the bus drivers and bus monitors, where the bus drivers and bus monitors received different rates of pay depending on the type of route driven, and the overtime rates reflect the differing rates of pay; and (2) whether the district court erred in granting the Board's motion for summary judgment in connection with the claims of those Plaintiffs who assert that they have worked unpaid overtime hours.

## II. STANDARD OF REVIEW

The grant of summary judgment is subject to de novo review and the circuit court applies the same standard used by the district court. Elan Pharm. Research Corp. v. Employers Ins. of Wausau, 144 F.3d 1372, 1375 (11th Cir. 1998).

## III. ANALYSIS

As noted, this case involves two different groups of plaintiffs. The first group, which consists of bus drivers and bus monitors, alleges that the Board violated the FLSA by paying different rates for regular and other routes, and calculating overtime through the use of a blended rate. The second group, which consists of paraprofessionals, secretaries, custodians, bus drivers, and bus monitors, asserts that they worked uncompensated overtime in violation of the FLSA. Although both groups appeal from the district court's ruling on the

Board's motion for summary judgment, the two have distinct facts and legal issues that are treated separately here.

A.  Different Rates for Different Routes

The first issue we address is whether the district court erred in granting the Board's motion for summary judgment in connection with the claims of the bus drivers and bus monitors.  Plaintiffs argue that the Board violated the FLSA when it paid a driver or bus monitor different rates of pay depending on the type of route driven.  On a regular route, the rate of pay is based largely on the employee's years of service to the school.  On an additional route, the rate of pay is set— a $6 per hour rate for field trips and a $7 per hour extended day rate that applies to everything other than the regular route and field trips.  In its brief, the Board utilized the following example to explain its current pay policy of blending these rates when calculating overtime:

> Bus drivers and aides earn straight time at the rate of pay applicable to the particular duty they are performing.  For example, if a driver drives a regular route for 25 hours in a week, and the driver's rate of pay for regular-route work is $11.00 an hour, he will earn $275.  If that driver also drives 15 hours of field trips during the same week, he will earn an additional $90 (15 hours x $6/hour).  If the driver also cleans his bus for 1 hour, drives an after-school route (taking students home following an after-school program) for 5 hours, and attends a safety-meeting for 2 hours, he will earn an additional 8 hours of work at the extended day rate of $7 an hour for a total of $56.  Therefore, in this example, the driver has worked a total of 48

hours in a week and earned a total of $421 straight time.

Because the driver in this hypothetical worked over 40 hours in the week, he is also entitled to 8 hours of overtime (or an additional ½ time). The overtime rate of pay is based on the blended (or weighted) rate of pay. The total straight-time compensation ($421) is divided by the total hours worked (48) to determine the blended rate of pay at which to pay the overtime. In this example, the blended rate is $8.77. Because this driver has already been paid straight time (or 1 time) for those 8 hours, he is entitled to ½ of the blended rate ($4.39) for a total additional overtime compensation of $35.12.

The district court found that this policy of paying different rates for different types of routes, and paying overtime based upon a blended rate, did not violate the FLSA because the routes constituted different types of work. While we disagree with the district court's analysis, we nonetheless affirm its grant of summary judgment for the Board on this issue because we believe that the Board's policy is in accordance with the FLSA.

When Congress enacted the Fair Labor Standards Act in 1938, its goal was to provide minimum wage and maximum hour protections for workers. Moreau v. Klevenhagen, 508 U.S. 22, 25 (1993). By establishing a floor for wages and a ceiling for hours worked without overtime compensation, lawmakers attempted "to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost." Bay

5

Ridge Operating Co. v. Aaron, 334 U.S. 446, 460 (1948).  To that end, § 6 of the FLSA establishes that an employee must receive no less than the statutorily-set minimum wage and § 7 mandates that an employee who works for more than forty hours a week is entitled to overtime compensation equal to one and a half times his regular rate of pay.  29 U.S.C. §§ 206, 207.

In the present case, Plaintiffs argue that the Board has violated the FLSA's mandate that overtime be paid at one and a half times the regular rate. Specifically, they assert that the Board's policy of blending the rates for regular and other routes, and calculating overtime based on the blended rate, does not satisfy the FLSA.  Plaintiffs cite to 29 U.S.C. § 207(g)[1] and 29 C.F.R. § 778.115 for the proposition that the use of a blended rate is improper because different rates of pay and the resulting blended overtime rate are only permitted if the employee is engaged in two or more different types of work.  We disagree.

We begin by noting that Plaintiffs' argument is predicated on their assumption that the rate paid by the Board for regular routes is their regular rate. Under the FLSA, the regular rate is derived from "all remuneration for

---

[1] Plaintiffs inadvertently cited 29 U.S.C. § 207(a), but clearly refer to the language in § 207(g) that "in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, [his or her rate] is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during non-overtime hours."

employment paid to, or on behalf of, the employees." 29 U.S.C. § 207(e). For this reason, the rate of pay Plaintiffs receive for regular routes is only the regular rate when Plaintiffs do not drive any of the other types of routes or receive any other rate of pay. When a driver drives a combination of regular and other routes, and receives two different rates of pay, then the combined pay for those rates must be used in calculating all remuneration for employment. The total remuneration for employment is then divided by the total number of hours actually worked in that workweek. See 29 C.F.R. § 778.209; Overnight Transp. Co. v. Missel, 316 U.S. 572, 580 n.16 (1942) ("[w]age divided by hours equals regular rate"). The number resulting from this equation is the employee's regular rate, and "the result . . . is unaffected by any designation of a contrary 'regular rate' in the wage contracts," Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945).

Section 7(g)(2) of the FLSA states that an employer does not violate the requirement that overtime payment be time and a half of the employee's regular rate, if:

> the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during non-overtime hours.

7

29 U.S.C. § 207(g)(2). Section 7(g)(2), therefore, alerts employers to an acceptable alternative method of calculating overtime for employees who are paid at more than one rate. The Board did not utilize the method described in this section, and we do not believe that the language contained therein should be construed as a requirement that different types of work be performed if different rates are paid. Section 7 regulates hours. It was not created as a way to regulate an employee's compensation, nor was its purpose "to prescribe that an hourly wage be set at any particular level; it is its purpose to require that an hourly wage be set at some level and that it be scrupulously adhered to, with augmented payments for overtime work." Nunn's Battery & Elec. Co. v. Goldberg, 298 F.2d 516, 520 (5th Cir. 1962). Indeed, the Supreme Court has said that "[a]s long as the minimum hourly rates established by § 6 are respected, the employer and employee are free to establish this regular rate at any point and in any manner they see fit." Walling, 325 U.S. at 424. Accordingly, § 7(g) does not require that different types of work be performed in order for employers to lawfully pay different rates.

Neither do the regulations mandate that different types of work be performed if different rates are paid. Plaintiffs state that "it is well-settled" under 29 C.F.R. § 778.115 that "different rates of pay and the resulting blended overtime

8

rate is only permitted if the employee is engaged in 'two or more different types of work.'" (Br. of Appellants at 14.) The relevant portion of 29 C.F.R. § 778.115 states that:

> [w]here an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs.

29 C.F.R. § 778.115. Plaintiffs argue that this section creates a requirement that, in order for a blended rate to be used in calculating the regular rate, different types of work must be performed. However, when viewed in the proper context, it is apparent that section 778.115 contains no such mandate. Section 778.109 states that:

> [t]he regular hourly rate of pay for an employee is determined by dividing his total remuneration for employment. . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid. The following sections give some examples of the proper method of determining the regular rate of pay in particular instances . . .

29 C.F.R. § 778.109. Following section 778.109 is a list of different employment arrangements and the proper method for complying with the FLSA for each type of arrangement. That list includes section 778.115. Thus, reading section 778.115

9

in the context of section 778.109, it becomes apparent that the former is one of the examples mentioned in the latter as a way that the regular rate may be calculated in certain cases. While it exemplifies one way that a regular rate may be determined, it does not mandate that differing rates of pay are only permitted when different types of work are performed.

For the reasons stated above, we hold that the FLSA does not contain a requirement that employees perform different types of work in order for employers lawfully to pay them different rates, and we believe that the Board's current policy is in accordance with the FLSA. With respect to this issue, the district court's ruling is affirmed.

B. Uncompensated Overtime

The second issue we must address is whether the district court erred in granting summary judgment in favor of the Board in connection with the claims of those Plaintiffs who assert that they worked uncompensated overtime hours.

According to Federal Rule of Civil Procedure 56, the district court should grant summary judgment only upon a showing that there is no genuine issue as to any material fact. The moving party bears the burden of proof, and the district court should "view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Whatley v. CNA Ins. Cos., 189 F.3d 1310,

1313 (11th Cir. 1999); Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Entry of summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the responsibility for demonstrating the basis for the summary judgment motion. Id. A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude grant of summary judgment. Anderson, 477 U.S. at 247-48 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d

11

642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Anderson, 477 U.S. at 248).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324). If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

In the present case, the district court held that summary judgment was appropriate, and that no genuine issues of fact remained. Specifically, the district court found that (1) when employees work overtime and record that time on their time sheets, the Board pays the overtime compensation; (2) the Board expended a significant amount of time and resources training the employees on how to properly record and turn in their time sheets; (3) all of the Plaintiffs acknowledged

12

in their depositions that they were instructed on how to record their hours worked, how to report a problem with their time cards or paychecks, and not to work overtime unless it had previously been approved by a supervisor; (4) some of the employees were allowed to take flex time, where if they worked more than forty hours in a week, they could take a corresponding amount of time off in flex time during that same pay period; (5) no employee was able to state with any clarity the hours he or she allegedly worked overtime; (6) each Plaintiff's testimony was "so vague and contradictory that it is impossible to determine whether they have claims against the Board"; (7) because of the nature of Plaintiffs' work, their supervisors could not monitor them all the time; and (8) there was "an absence of anything to put the Board on notice that overtime was worked."

Plaintiffs now urge us to reverse this ruling, arguing that the district court erred in finding no remaining questions of fact regarding their entitlement to compensation for unpaid overtime. Plaintiffs argue that they have set forth sufficient evidence to demonstrate that they worked unpaid overtime, and are permitted to approximate the number of hours they have worked. They also assert that there is a genuine issue of material fact as to the Board's actual or constructive knowledge of their uncompensated overtime work.

Under the FLSA, an employer may not employ his employee for a

13

workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate. 29 U.S.C. § 207(a)(1). A person is employed if he or she is suffered or permitted to work. 29 U.S.C. § 203(g). It is not relevant that the employer did not ask the employee to do the work. The reason that the employee performed the work is also not relevant. "[I]f the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." Reich v. Dep't of Conservation and Nat. Res., 28 F.3d 1076, 1082 (11th Cir. 1994) (citing 29 C.F.R. § 785.11).

In order to prevail on their claim in this case, Plaintiffs must prove that they were suffered or permitted to work without compensation. 29 U.S.C. § 201 et seq. Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the Board knew or should have known of the overtime work. See Reich, 28 F.3d at 1081-82; see also 29 C.F.R. § 785.11 (interpreting the "suffer or permit to work" requirement to mean that an employer violates the FLSA when it "knows or has reason to believe that he is continuing to work and the time is working time."). In granting summary judgment for the Board, the district court noted that it believed Plaintiffs could prove neither that they worked overtime without compensation, nor that

14

their supervisors knew or should have known of this overtime work. Examining these issues in turn, we review the district court's ruling de novo, applying the same standard used by the district court.

1. Performance of Uncompensated Overtime Work

In granting the Board's motion for summary judgment, the district court stated that Plaintiffs had failed "to state with any clarity the hours they allegedly worked overtime" and had provided testimony that was "so vague and contradictory that it is impossible to determine whether they have claims against the Board." On appeal, Plaintiffs argue that the district court erred in finding that their approximations did not provide a sufficient basis to survive summary judgment. We agree with Plaintiffs.

To the extent that evidence conflicts at summary judgment, the district court has an obligation to "view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Whatley, 189 F.3d at 1313; Anderson, 477 U.S. at 255. If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. Of Wausau, 835 F.2d 855,

15

856 (11th Cir. 1988)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." See Anderson, 477 U.S. at 255.

Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation,"[t]he remedial nature of this statute and the great public policy which it embodies . . . militate against making that burden an impossible hurdle for the employee." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). It is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment. Id. The employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed and "[e]mployees seldom keep such records themselves." Id.

In Anderson, the Court noted that if an employer has failed to keep proper and accurate records and the employee cannot offer convincing substitutes,

> [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an

16

employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

Id.

Thus, in situations where the employer's records cannot be trusted and the employee lacks documentation, the Supreme Court held "that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. Id. at 687-88. "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Id. at 688.

Plaintiffs' deposition testimony calls into question the Board's records. Some employees testified that they were told not to record their overtime hours because the Board would not pay them overtime. Some recorded their overtime hours, but were made to take back their accurate time sheets and resubmit new time sheets that reflected their scheduled, not actual, hours. At least one plaintiff

said that time sheets were torn up if they reflected overtime work. Another said that the individual in charge of time sheets would white out time worked on his time sheets.

If true, these facts indicate that the Board's records cannot be trusted. According to Anderson, in this type of situation the employee carries its burden of proving that he or she performed work without proper compensation if he or she produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.

Plaintiffs made statements regarding the amount and extent of their uncompensated work in declarations and in deposition testimony taken by the Board. The Board argues that Plaintiffs' declarations should be disregarded because they are unnotarized, unsworn, and because they contradict Plaintiffs' deposition testimony.

In Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 656 (11th Cir. 1984), this Court affirmed a district court's finding that an affidavit that contradicted testimony on deposition was a sham when the party merely contradicted its earlier testimony without giving any valid explanation. There, we said that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot

18

thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  Id. at 657.

This rule is applied "sparingly because of the harsh effect [it] may have on a party's case."  Rollins v. Tech South, 833 F.2d 1525, 1530 (11th Cir. 1987).  Furthermore,

> to allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the . . . affiant . . . was stating the truth.

Tippens v. Celotex Corp., 805 F2d 949, 953-54 (11th Cir. 1986).  As such, "our cases require the court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit."  Id. at 954.

We do not believe that the sort of inherent inconsistency exists between the deposition testimony and declarations that would require us to find Plaintiffs' declarations a sham.  The declarations were made before the deposition testimony, and to the extent an individual plaintiff varied from the statements made in his or her declaration about hours worked, it was to admit that he or she lacked certainty about the number of hours worked, and on what days they had worked those hours.  This is the type of inconsistency that the Board should test through cross-examination at trial and allow the jury to weigh in determining the credibility of

19

each plaintiff's testimony in support of his or her claims.[2]

It is not insignificant that Plaintiffs' inability to state the hours they worked may be at least partly the fault of the Board; after all, several Plaintiffs have testified that when they submitted time sheets to the Board that showed overtime work, those time sheets were destroyed. Because the Board seems to bear at least partial responsibility for the lack of documentation, we must reject its assertion that Newton v. City of Henderson, 47 F.3d 746 (5th Cir. 1995), supports summary judgment here. In Newton, the court found no violation of the FLSA because Plaintiff failed to record his overtime work on his time sheets. Id. at 750. Yet, unlike the plaintiff in Newton, several Plaintiffs in this case testified that they were discouraged from accurately recording overtime work on their time sheets, and were encouraged to falsify their own records by submitting time sheets that reflected their scheduled, rather than actual, hours. It can be inferred that these Plaintiffs would have reported their overtime if they had not been discouraged from doing so.

Furthermore, it is possible that Plaintiffs' burden at trial may ultimately be

---

[2] We note that the district judge indicated that he considered each Plaintiffs' declaration individually and specifically stated that the entire record was taken into consideration. The court noted that the declarations were "at least minimally sufficient to satisfy the requirements of the statute because they were made 'under the penalty of perjury.'" Although the district court declined to strike the declarations and did not find them to be a sham, it found that they were not sufficient to create a material issue of fact.

met with evidence other than precise, written documentation. For example, while Porter-Glover could not produce documents proving her overtime work, she testified to certain "triggering factors," such as occasional after-school ice cream sales, dances, and occasions when parents were late to pick up their children that helped her recall when she worked overtime. The ice cream sales occurred two to four times a week and Ms. Wesley would witness Porter-Glover selling ice cream because she would come in to buy ice cream from her. PTO meetings occurred every six weeks beginning in 2000, and on the dates that PTO meetings were held Porter-Glover would be at school "from the time school ended until after the PTO meeting, which would be usually about 7:30 to 8:00." Porter-Glover testified that she only missed two PTO meetings, and that the school had a calendar of PTO meetings, which Porter-Glover had created. Furthermore, the Board elicited from Porter-Glover that numerous individuals, including the assistant principal, the school secretary, numerous co-workers, and her husband would be able to support her claim that she worked beyond her scheduled hours. We believe Anderson demonstrates that Plaintiffs may ultimately be permitted to show the amount and extent of their unpaid overtime as a matter of just and reasonable inference based on facts such as these.

Thus, it is clear that the Board was not entitled to summary judgment based

on Plaintiffs' lack of documentation and inability to state with precision the number of uncompensated hours they worked and the days on which that work was performed. We believe that Plaintiffs have produced "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." See Anderson, 328 U.S. at 687. We also believe that there is no merit in the Board's contention that Plaintiffs cannot recover because any off-the-clock work was of such short duration or sporadic that it was negligible. The evidence presented in the declarations and deposition testimony in this case indicates that the amounts in question are not negligible; therefore, Mitchell v. Adams, 129 F. Supp. 377 (M.D. Ga. 1955), has no application here.

### 2. The Board's Actual or Constructive Knowledge

The Board claims that even if unpaid hours can be shown, Plaintiffs cannot demonstrate that their supervisors knew that they were working overtime without pay. Plaintiffs' claims were viable if a reasonable jury could conclude from the evidence that the Board had actual or constructive knowledge.

### a. Actual Knowledge

Two plaintiffs testified that they worked overtime and notified their supervisors that they had not received pay. Angela Porter-Glover testified that her supervisor, Ms. Wesley, who was the principal of the school, told her that she

22

could not continue to be paid overtime, and would need to take comp time. This indicates that Ms. Wesley was aware that Porter-Glover was working overtime hours. However, even though Ms. Wesley told Porter-Glover that she would need to take comp time, when Porter-Glover earned and tried to use hours of comp time, on at least one occasion Ms. Wesley could or did not allow Porter-Glover to take comp time.[3] Porter-Glover's testimony raises a genuine issue of material fact as to the Board's actual knowledge, because Ms. Wesley was aware that Porter-Glover had been told that she could not be paid overtime, and was aware that she had earned hours that she could not be compensated for with comp time.[4] See Reeves

[3] Porter-Glover testified that this occurred on more than one occasion, but could not recall more than one specific instance.

[4] The Board responds to Plaintiffs' testimony by stating that even if a supervisor saw an employee working beyond his or her scheduled hours, that supervisor would not have assumed that the employee was working without pay. Instead, the supervisor would have assumed that the employee would be compensated under the Board's flex time policy, which gave employees time off in exchange for overtime hours worked.

To show that there was not a genuine issue as to the Board's knowledge, the Board is required to point to materials on file with the court that demonstrate the absence of a factual dispute. Part of the Board's argument is that the existence of a flex time policy allowed the Board to assume that flex time was being taken to compensate for unscheduled hours worked. The Board did not, however, reference any materials on file to support that assertion. For example, other than the arguments contained in its briefs, the Board points to nothing in the record that indicates that the Board assumed that Porter-Glover, or any Plaintiff in this case, was compensated through the use of flex time.

To the extent that the Board claims that the flex time policy would permit the assumption that an employee was compensated for working beyond his or her scheduled hours, there is nothing on file, such as an affidavit from an employee's supervisor, stating that the supervisor assumed that the employee would receive flex time. Our skepticism is bolstered by the fact that

23

v. Int'l Tel. & Tel. Corp., 616 F.2d 1342, 1353 (5th Cir. 1980) ("Knowledge will generally be imputed to the offending employer.").

Clara Patterson claims that she also worked for Ms. Wesley. Patterson's deposition testimony revealed that Patterson attended a meeting in which Ms. Wesley stated that she "could not approve" overtime; however, Ms. Wesley did not say that employees should not work beyond their scheduled hours. Although Patterson does not specifically recall Ms. Wesley telling her that she was required to work without pay, she stated that it was her understanding that when Ms. Wesley asked her to stay late, it would be without pay. Patterson recalls that she worked "three or four" Saturdays to prepare paperwork for returning teachers, and on "maybe all except one" of those Saturdays, Ms. Wesley was also at the school. Patterson states that she told Ms. Wesley that she also brought work home with her. Patterson's testimony creates a genuine issue of material fact as to the Board's actual knowledge, because Patterson's supervisor told her that she could not be paid overtime, but observed her working beyond her scheduled hours. As a

Sharon Patterson's August 17, 2001 Memorandum addressing flex and comp time stated that an employee must receive prior approval from his or her supervisor before flex time could be utilized. In other words, it was clear that flex time was not earned if it had not been approved beforehand, which means that no supervisor could believe that an employee was receiving flex time if it had not been approved in advance. Of course, the Board could argue that one employee may have had more than one supervisor who could have approved flex time; however, an issue of fact would still exist.

24

jury could reasonably conclude that Ms. Wesley knew that Patterson was working without pay, summary judgment as to Patterson was improper.

In both cases, actual knowledge can be presumed and summary judgment was not appropriate.

### b. Constructive Knowledge

Other Plaintiffs testified in their depositions that although they could not be sure that the Board had actual knowledge of their overtime work, circumstances should have alerted the Board that they performed work beyond their scheduled hours without pay. These circumstances, they argue, provided the Board with constructive knowledge.

An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond his shift. 29 C.F.R. § 785.11. The employer's knowledge "is measured in accordance with his 'duty . . . to inquire into the conditions prevailing in his business.'" Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508, 512 (5th Cir. 1969) (quoting People ex rel. Price v. Sheffield Farms-Slawson-Decker Co., 121 N.E. 474 (N.Y. 1918)).

There is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning

25

of it.  Forrester v. Foodliner, 646 F.2d 413, 414 (9th Cir. 1981).  However, our predecessor court stated that when an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge.  Brennan v. Gen. Motors Acceptance Corp., 482 F.2d 825, 828 (5th Cir. 1973).

At summary judgment, it was the Board's burden to support the motion by reference to materials on file that demonstrated the absence of any genuine issue of material fact as to its knowledge.  To that end, it referred the trial court to portions of some of Plaintiffs' depositions indicating that the Board lacked actual or constructive knowledge.  These deposition excerpts supported the Board's argument that some Plaintiffs had not informed their supervisors of their overtime work, or had not told them that they had not recorded or been paid for hours that the supervisor may have known they worked beyond their scheduled hours.  Plaintiffs responded with specific references to testimony that tended to create a dispute of fact as to whether the Board knew or should have known that Plaintiffs were working without pay.  We believe that summary judgment as to some Plaintiffs was inappropriate, but affirm the grant of summary judgment as to others.

Several Plaintiffs testified that their supervisors were aware of their work

beyond their scheduled hours. An issue of fact exists as to the Board's knowledge that these Plaintiffs were performing work without compensation. Alicia Allen is one such plaintiff who testified that her supervisors knew that she had worked beyond her scheduled hours. She testified that Bob Donaldson, the transportation department director, clocked her out when he knew she was still working. She also testified that Bernard Kitchens, a route supervisor, knew she was working off the clock.

Timothy Brown testified that he recorded certain hours on his time sheets that Patti Allen removed from or changed on his time sheet. Brown stated that he told Mr. Donaldson that Ms. Allen had altered his time sheets, and Mr. Donaldson told him that he didn't have time and "go back to Patty."

Wilbert Jones testified that he worked without pay on several occasions, such as when his lunch break was interrupted and when he worked late. He stated that he told Ms. Spies, his principal, that he was working late.

Vera Long testified that she had to supervise children on her lunch break and the secretary told her she needed to sign out regardless of whether she had to work during lunch. She stated that her supervisors knew she was working at lunch because they would be in the lunch room when she and the children were there. Long also testified that she worked overtime when buses broke down or were late,

and when she needed to attend meetings.

Earline Scott testified that she worked hours she did not record on her time sheet because her supervisor said he would "take care of it." After performing the overtime work, she asked her supervisor if she should record the hours on her time sheet, and her supervisor, Mr. Carswell, said "no, I'll take care of it" or "I'll take care of it." Scott testified that she knew she never received more pay in her check.

John Finney testified in his deposition that Dr. Sims, his supervisor, told him that he should record his scheduled time to finish work on his time sheet, even if he had worked later. He said that when Dr. Sims said this to him, he had worked an hour beyond his scheduled time. According to Finney, Dr. Sims explained that Dennis Staton, the Director of Custodial Services, had told her that if Finney took a long time to do his job, he should record on his time sheet the time that he was scheduled to leave, not when he actually left. In his deposition, Finney offered contradictory testimony indicating that he had been paid for his overtime work, but he also claimed at several points not to understand the questions he had answered. Finney's declaration states that during his employment with the Board, he regularly worked one extra hour beyond his scheduled work time. Additionally, his declaration alleges that he was forced to work off the clock for PTA meetings and had to work outside of his scheduled

28

hours.

Essie Williams testified that she washed and cleaned her bus without pay. Her deposition testimony indicates that she alerted two transportation department directors, Beverly Skipper and Bob Donaldson, to the fact that she was not being paid for washing and cleaning her bus. Ms. Skipper informed Williams that she would not be paid for the work because it was part of her job. Even though the Board argues that Skipper's last date of employment was August 11, 2000, and the district changed its procedures for recording hours in July of 2000, Williams's testimony is sufficient to create a genuine issue of material fact as to whether Williams performed uncompensated work with the knowledge of the Board.

The Board argues that these allegations are insufficient to create a genuine issue of fact as to the Board's knowledge. They state that even if the supervisors were aware that Plaintiffs were working beyond their scheduled hours, the supervisors did not know that Plaintiffs were not recording their time and would not be paid. We believe that these arguments should be made to a jury. Plaintiffs are or were hourly employees who worked set schedules. Testimony abounds that Plaintiffs were told that the Board would not pay overtime. The Board acknowledged that it recently paid out large sums of money to employees who had

not received pay that they were due.[5]  The Board's claim that the supervisors lacked knowledge of the uncompensated work is not sufficiently supported by materials on file, such as deposition testimony or declarations executed by the supervisors.  Accordingly, we believe that the circumstances were such that, even if these Plaintiffs did not inform their supervisors that they were not recording their hours, a jury could still charge the Board with constructive knowledge.

Some Plaintiffs did not inform their supervisors of their overtime work, but an issue of fact nonetheless remains as to whether the Board should be charged with constructive knowledge as to them.  Our cases indicate that an employer can be charged with constructive knowledge even when an employee has not alleged a supervisor's direct knowledge.  We have said that if an employer had an opportunity to acquire knowledge of an employee's work by using reasonable diligence, then the employer can be charged with constructive knowledge.  Reich, 28 F.3d at 1082 (citing People ex rel. Price, 121 N.E. at 476).  An employer is not excused merely because his business requires him to rely on subordinates and personal supervision is not possible.  Id.  "The cases must be rare where prohibited

---

[5]  The Board provided this information in its brief, where it noted that "[i]n March 2001, the School District paid 418 non-exempt employees a total of $376,735.28 in back wages covering the time period from August 2, 1998 to July 30, 2000.  This 'pay out' was under the supervision of the Department of Labor and was conducted with the assistance of two accounting firms in addition to the School District's staff and legal counsel."

work can be done . . . and knowledge or the consequences of knowledge be avoided." Id. (quoting People ex rel. Price, 121 N.E. at 476).

In Brennan v. General Motors, the Fifth Circuit found constructive knowledge where the employer's employees performed their work independently and the employer relied on them to accurately report their hours because close supervision was not possible. When employees underreported their hours, the court found that although upper management encouraged truthful reporting, immediate supervisors had pressured employees to understate their hours. The court determined that the exercise of reasonable diligence would have made the employer aware of this fact. Brennan, 482 F.2d at 827.

The following Plaintiffs presented evidence that created a genuine issue of material fact as to whether the Board should have known of their uncompensated work. Their claims should have survived summary judgment because, taking Plaintiff's facts as true, a jury could conclude that Plaintiffs' truthful responses were squelched. Knowledge cannot be avoided simply because certain supervisory tasks were delegated to subordinates. Summary judgment as to these plaintiffs was improper as the relevant inquiry is a highly factual one that only a jury is equipped to undertake.

Katherine Laster testified that she worked overtime when she came to work

early and worked on her lunch break.  In her deposition, she was never asked whether her supervisor knew she was working overtime without pay, but in her earlier declaration she states that her overtime work was performed with the Board's knowledge. Her deposition testimony reflects that when she arrived to work early and signed in using her actual time, the secretary, Ms. Pullen, corrected her and told her to sign in the time she was scheduled to arrive.  Laster believed that the secretary was the voice of the principal.

Sharon Walker testified that she worked beyond her scheduled hours when she came in early or worked late in order to finish her work.  She claims she was given more work than time in which to complete it.  She admits she did not tell her supervisors that she worked late, nor that she was not recording her hours.  Walker testified that her supervisor knew that she was working beyond the time that she recorded on her time sheet.  When she recorded her actual hours worked, the school secretary called her and told her that she needed to put her scheduled time on her time sheet.

Eleanor Welch testified that she worked off the clock during lunch, took work home, and worked late after school.  She stated that although she never informed the principal or assistant principal about her extra work off the clock, when she worked at lunch it was because the teacher was absent and the principal

and assistant principal knew that she would be with the children all day without a break.

Although summary judgment was improperly granted as to the Plaintiffs discussed above, the district court did not err in granting summary judgment against other Plaintiffs. For example, some Plaintiffs have stipulated that they accurately reported all of their hours during the relevant time period. Their only claim is that the Board improperly calculated their overtime when they were paid at different rates for the same type of work. As we have held that the Board's methodology did not violate the FLSA, summary judgment was appropriate as to those Plaintiffs. The Plaintiffs in this group are Melissa Braxton, Patricia Ann Brown, Betty Davison, Melissa Deshazer, Corine Gilmore, Tamika Hutchings, Dorothy Lester, Shandrika Matthews, Sylvia Pettigrew, Henry Poole, Bobby Strange, Loretta Thomas, and Dorothy Woodford.[6]

Likewise, some Plaintiffs testified in their depositions that all of the hours they worked were properly recorded on their time sheets. The Plaintiffs in this group are Barbara Andrews, Shirley Brown, Carolyn Finney, Veronica Jackson, and James Mays. Summary judgment was appropriate as to these Plaintiffs.

For the reasons stated in the Board's brief, to which Plaintiffs stated no

---

[6] At one point, it appears that Essie Williams was also part of this group.

disagreement, Patricia Stewart's claims are barred by the statute of limitations because she was not employed within the applicable time period. Accordingly, summary judgment was appropriate as to her.

Other Plaintiffs presented insufficient facts tending to show that the Board was aware of their overtime work. As to them, no genuine issue of material fact existed and summary judgment was proper. The facts relating to these plaintiffs are detailed below.

Alice Johnson testified that she worked unpaid hours when she stayed late, but no one told her to work off the clock and she did not inform anyone of her overtime work. She testified that she does not know how the Board should have known that she was working without compensation. As to Johnson, it was not error for the district court to grant summary judgment in favor of the Board, as Johnson's unsupported declaration constitutes a mere scintilla of evidence that the Board had actual or constructive knowledge of her overtime work. See Gunning v. Cooley, 281 U.S. 90, 94 (1930) ("A mere scintilla of evidence is not enough to require the submission of an issue to the jury.").

Norarene Gilbert is a bus driver who parked her bus at home at the end of her work day. She estimates that on about ten occasions she cleaned her bus and did not record her time. She testified that she never told anyone that she had not

34

recorded her time on her time sheets. In her declaration, she stated that there were other occasions that required her to work off the clock and she stated that school representatives and officials were aware of this work; however, she put forth no testimony to support such claims. As to Gilbert, the mere scintilla of evidence presented in her declaration is not sufficient to survive summary judgment. Id.

LaRose Smith testified that she did not perform any work off the clock and she put all the hours that she worked on her time sheets. Nevertheless, she stated in her deposition that there must have been time that did not end up on her time sheet because she did not see a difference in her pay when she stayed late to speak with her route supervisor. Smith's testimony to this effect presents a mere scintilla of evidence to support her claims and we cannot find error in the grant of summary judgment as to her. Id.

C. Liquidated Damages

The FLSA provides that violations of the Act will trigger liability in the amount of the employee's unpaid overtime compensation "and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An exception exists when the employer acted in good faith and had "reasonable grounds for believing that he was not violating the Act." 29 U.S.C. § 260.

The district court ruled that Plaintiffs had failed to prove any violation of

the FLSA and, as a result, had no entitlement to any type of damages. We have determined that the district court's grant of summary judgment in favor of the Board was erroneous as to certain Plaintiffs, because we believe an issue of fact exists with respect to their claims. Where issues of fact remain, we reverse the district court's ruling that those Plaintiffs have no entitlement to damages, and we remand for further proceedings consistent with this opinion. Of course, where we have affirmed the district court's grant of summary judgment as to other Plaintiffs, we also affirm its ruling that those Plaintiffs are not entitled to damages.

D. Statute of Limitations

Although the ordinary statute of limitations in cases brought under the FLSA is two years, a cause of action arising out of a willful violation of the FLSA may be commenced within three years after the cause of action accrued. 29 U.S.C § 255(a). A willful violation may be found when the employer "disregarded the very 'possibility' that it was violating the statute." Alvarez v. IBP, Inc., 339 F.3d 894, 908–09 (9th Cir. 2003) (citing Herman, 172 F.3d at 141). The three-year statute of limitations may apply even when the employer did not knowingly violate the FLSA; rather, it may apply when it simply disregarded the possibility that it might be violating the FLSA. If an employer acts unreasonably but not recklessly in determining its legal obligation under the FLSA, then its actions should not be

considered willful and the two-year statute of limitations should be applied. Lockaby v. Top Source Oil Analysis, Inc., 998 F. Supp. 1469, 1471 (N.D. Ga. 1998)(citing McLaughlin, 486 U.S. at 135 n.13). The determination of willfulness is "a mixed question of law and fact." Id. at 908.

We have concluded that triable issues of fact remain as to some Plaintiffs' claims that they worked overtime without compensation; as such, the district court's ruling that the two-year limitation applies is reversed and a determination of which statute of limitations to apply must be reserved until it is determined whether a violation of the FLSA occurred in this case.

## IV. CONCLUSION

For the foregoing reasons, we hold that the district court's ruling must be affirmed in part and reversed in part.

AFFIRMED IN PART, REVERSED IN PART.

37