Catovia **RAYNER**, Plaintiff-Appellant,

v.

**DEPARTMENT OF VETERANS AFFAIRS, Defendant-Appellee.**

**No. 16-13312**
**Non-Argument Calendar**

United States Court of Appeals, Eleventh Circuit.

(April 10, 2017)

Jerry Girley, The Girley Law Firm, Orlando, FL, for Plaintiff-Appellant

Karin Bethany Hoppmann, Linda Julin McNamara, Arthur Lee Bentley, III, U.S. Attorney's Office, Tampa, FL, Scott H. Park, U.S. Attorney's Office, Orlando, FL, for Defendant-Appellee

Before ED CARNES, Chief Judge, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Catovia Rayner is an African American female employee of the Department of Veterans Affairs. While working at the Orlando VA Medical Center, she applied for a promotion but was told that the position had already been filled by a white male. After she filed an Equal Employment Opportunity complaint regarding that series of events, she was the subject of several disciplinary actions. In response, she sued the VA, alleging that it discriminated against her based on her race and sex and retaliated against her for her EEO complaint. The district court granted the VA's motion for summary judgment, and Rayner appeals.

I.

From September to October 2009 the Orlando VA advertised internally and externally a vacancy for a "homeless veterans coordinator" position. Nineteen people applied during that period; Rayner was not one of them. Budget issues delayed the consideration of those applicants, but in May 2010 the VA informed Kenneth Mueller, a white male, that he had been selected for the position. Nevertheless, Mueller was not able to immediately start his tenure as the homeless veterans coordinator because of ongoing budget concerns.

Six months passed. Then, in November 2010, the assistant chief of the Orlando VA Social Work Service unit, Heather Gallagher, sent out an email to her department. Part of the email read: "Mental Health was give[n]· approval to fill the following Social Work vacancies, please let me know if you are interested in any of these positions." The email listed the homeless vet-

erans coordinator position among the "vacancies."

At that time Rayner was a social worker working under Gallagher in the Social Work Service unit. Rayner interpreted the email as inviting applications for the homeless veterans coordinator position, and she emailed Gallagher with her application materials. Gallagher responded that a selection had already been made for that position and that her "original email was intended only to inform staff that Mental Health Service had received approval to fill all of the positions listed." Rayner then reached out to Sandra Tutogi, a human resources specialist, for more information about the homeless veterans coordinator position. Tutogi backed up Gallagher, stating in an email to Rayner that the vacancy had been announced in 2009 and that the selection had been made before Gallagher sent her November 2010 email and Rayner applied. Rayner, apparently unconvinced, filed an EEO complaint in July 2011 alleging that the VA's selection of Mueller over her was a product of race and sex discrimination.

For the next year Rayner faced criticism from her superiors for workplace issues that were purportedly unrelated to her complaint. Gallagher issued Rayner a "proposed reprimand" for instigating a "verbal altercation" during a team meeting. The chief of the Social Work Service unit, Denise DaCosta, downgraded the reprimand to an "admonishment." DaCosta also issued Rayner a reprimand for a separate incident at a training event. And while Rayner's 2011–2012 mid-year review rated her performance as "fully successful"—the highest rating possible on a mid-year review—it contained a somewhat critical "narrative" written by Gallagher. The narrative stated that Rayner "will continue working toward her professional goals including attention to her interpersonal skills." At her deposition in this case, Rayner testified that her 2011–2012 year-end review for that period did not mention her admonishment and that she could not remember what her overall rating was on that year-end review.

In the wake of those disciplinary actions, Rayner brought suit under Title VII of the Civil Rights Act. She asserted two claims against the VA: (1) that its refusal to select her for the homeless veterans coordinator position was the result of race and sex discrimination, and (2) that her supervisors' disciplinary actions against her constituted unlawful retaliation for her EEO complaint.

After discovery the VA moved for summary judgment on both claims. The district court analyzed the motion under the familiar burden shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and concluded that Rayner had not shown that either claim presented a genuine issue of material fact. As a result, it entered summary judgment in favor of the VA on both claims.

Rayner now works at a VA facility in Spokane, Washington. She is the chief of social work at that facility, a position with better pay and more responsibility than her position in Orlando.

## II.

Rayner contends that the district court erred in granting summary judgment on both her claims. "We review de novo a district court's grant of summary judgment and draw all inferences and review[ ] all evidence in the light most favorable to the non-moving party." Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted). "Summary judgment is properly granted when there is no genuine issue as

to any material fact and the moving party is entitled to a judgment as a matter of law." D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1225 (11th Cir. 2005) (quotation marks omitted). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1313 (11th Cir. 2007).

Under the McDonnell Douglas burden shifting framework, "the employee first must show a prima facie case of discrimination." Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1237 (11th Cir. 2016). Then, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." Id. Finally, the burden shifts back to the employee to "show that the proffered reason is mere pretext." Id.

## A.

Rayner first argues that the district court should not have entered summary judgment on her employment discrimination claim. We disagree.

■ Even assuming that Rayner presented a prima facie case of discrimination, the VA articulated a legitimate, nondiscriminatory reason for not hiring Rayner: By the time she applied, Mueller had already been selected to fill the position. Because the VA made that showing, Rayner had to present evidence sufficient to create a genuine issue of material fact as to whether the VA's reason was "mere pretext." See Quigg, 814 F.3d at 1237.

She did not carry that burden. She did not point to any evidence that she actually applied for the position during the fall 2009 application period, nor to any evidence that Mueller had not already been selected when she did apply, nor to any evidence that contradicted the testimony by multiple VA administrators that Mueller's start had been delayed due to budget issues. The only affirmative evidence of pretext that Rayner presented was Gallagher's email, which erroneously implied that the homeless veterans coordinator position was available. But a reasonable jury could not return a verdict for Rayner based on a single poorly worded email. Accordingly, there was no genuine issue of material fact with respect to the discrimination claim, and summary judgment was appropriate. See Allen, 495 F.3d at 1313.[1]

## B.

Rayner also argues that the district court erred in entering summary judgment on her retaliation claim. Title VII's antiretaliation provision "protects an individual

---

[1] Rayner argues that the district court erred in analyzing her case under only the McDonnell Douglas burden shifting framework. Although she does not clarify what other framework the district court should have used, she is correct that "establishing the elements of the McDonnell Douglas framework" is not the only way "for a plaintiff to survive a summary judgment motion in an employment discrimination case." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). For example, Rayner could have presented a "mosaic of circumstantial evidence that would [have] allow[ed] the jury to infer intentional discrimination." See id. The problem is that in her brief opposing the VA's motion for summary judgment in the district court, Rayner herself set out and analyzed only the McDonnell Douglas framework. Because she did not raise in the district court alternative theories of liability, such as the mosaic theory, we will not consider any other theory on appeal. See Access Now, Inc. v. S.W. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("If [this Court] were to regularly address questions ... that district[ ] court[s] never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court."). We do not mean to imply that it would make any difference if we did.

not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67, 126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006) (citing 42 U.S.C. § 2000e-3(a)). That means that to sustain a retaliation claim under Title VII, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68, 126 S.Ct. at 2415 (quotation marks omitted).

Rayner asserts that the district court misapplied the Burlington decision's definition of "materially adverse" because it "focused on the fact that [she] did not suffer any tangible harm as a result of [the disciplinary] actions." She claims that the disciplinary actions she was subject to—the admonishment, the reprimand, and her alleged "lowered evaluation"—satisfied the material adversity standard because "a reasonable worker" would be less likely "to complain about discrimination if [s]he knew that [s]he would likely be reprimanded later by the very person that [s]he complained about."

As the Burlington Court explained, "the significance of any given act of retaliation will often depend upon the particular circumstances." Id. at 69, 126 S.Ct. at 2415. In light of that language, we cannot agree with Rayner that the issuance of an admonishment and a reprimand by the targets of a discrimination complaint is per se materially adverse under Title VII. Instead, we must look at the entire context of Rayner's complaint and the admonishment and reprimand issued to her. See id. (noting that in assessing material adversity, "[c]ontext matters"). Rayner does not point to any evidence that her pay or promotion prospects were negatively af-

fected by the admonishment or the reprimand. Indeed, the fact that Rayner is now chief of social work at the Spokane VA suggests that they did not serve as a significant barrier to her obtaining a promotion. And while Rayner claims that she received a "lowered evaluation" after her complaint, she received the highest possible rating on her 2011–2012 mid-year review and she testified that she could not remember what her 2011–2012 year-end review rating was.

In sum, there is no indication that the disciplinary actions she was subject to were so harmful that they would dissuade a reasonable employee from making a charge of discrimination. See id. at 68, 126 S.Ct. at 2415. Because Rayner did not present evidence showing that she suffered a materially adverse employment action, summary judgment on her retaliation claim was appropriate.

**AFFIRMED.**