[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13197
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cv-01687-AKK


MELINDA JAMES,

Plaintiff-Appellant,

versus

TOTAL SOLUTIONS INC.,
MORAYMA MCKINNEY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(May 31, 2017)

Before ED CARNES, Chief Judge, JULIE CARNES, and JILL PRYOR, Circuit
Judges.

PER CURIAM:

Melinda James, who is white, sued her former employer, Total Solutions Inc., and its Cuban-American CEO, Moraymo McKinney, for race discrimination and retaliation. The district court granted summary judgment to Total Solutions and McKinney. This is James' appeal.

I.

Total Solutions is a government contractor that often works for the Centers for Disease Control and Prevention. James became a program manager at Total Solutions in 2009, replacing an African American who had been fired from that position for poor performance. A couple of months after James joined, McKinney told her that James had been the victim of "reverse discrimination." That comment was apparently a reference to the CDC improperly promising cash bonuses to two of James' African American coworkers, but not to James.

That summer James was assigned to temporarily "backfill" as a contract specialist — as opposed to her normal role as a program manager — working with the CDC. Leslie Lewis and Yvette West, who are both African American, took over James' program manager duties while James was backfilling.

James returned from her backfill assignment in September and began facing criticism from her superiors for her performance as a program manager. James' problems included: incorrectly calculating several employees' pay rates, causing some employees to be underpaid and others overpaid; incorrectly stating an

2

employee's termination date, which was either impermissible "backdating" or meant that the employee continued being paid after the employee left Total Solutions; attempting to slough off responsibility for an error onto a coworker; and failing to strike the proper tone in communications with a client. McKinney and another Total Solutions executive both testified that in addition to the problems they personally noticed, the CDC also complained about James' performance. Ultimately, in October McKinney ordered one of James' superiors to fire James.

In response, James filed an EEOC charge, alleging that the errors she was supposedly fired for were actually committed by Lewis and West, her replacements while she was backfilling for the CDC. She contended that the fact that Lewis and West were not fired, even though they were allegedly responsible for the problems, showed that she was fired because she is white.

While pursuing her EEOC charge, James found a new job with a different government contractor, North American Management. There, she helped the CDC manage contracts between the CDC and third parties — one of which was Total Solutions. Total Solutions feared that James was using her new position to steer contracts away from Total Solutions because of her history with it as her former employer. As a result, a representative of Total Solutions disclosed to the CDC that James had filed an EEOC charge against Total Solutions, meaning that she could have a conflict of interest. The CDC reassured Total Solutions that there

was no problem because James had no influence on the contract awarding process. James eventually filed a second EEOC charge against Total Solutions, alleging that the disclosure was retaliation for the first EEOC charge.

Later, James voluntarily left North American Management for a position inside the CDC. While she was working there, a CDC representative approached McKinney at an industry event and directed her to talk to Stephen Lester, who was a CDC contracting officer, about James' potential conflict of interest. Following that instruction, McKinney spoke with Lester about James' EEOC charges, and Lester explained that there was no conflict of interest problem.

James brought suit against Total Solutions and McKinney, asserting claims for race discrimination under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. She also asserted claims for retaliation under Title VII and § 1981 based on Total Solutions' two discussions with the CDC about her EEOC charges. After discovery, the district court entered summary judgment in favor of Total Solutions and McKinney on all counts.

## II.

"We review de novo a district court's grant of summary judgment and draw all inferences and review[ ] all evidence in the light most favorable to the non-moving party." Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted). "Summary judgment is properly

4

granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1225 (11th Cir. 2005) (quotation marks omitted). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1313 (11th Cir. 2007).

Because James presented only circumstantial evidence of discrimination, the district court analyzed her claims under the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and we will do the same. "Under that framework, the employee first must show a prima facie case of discrimination. Then, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Finally, the employee has to show that the proffered reason is mere pretext." Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1237 (11th Cir. 2016) (citations omitted). The elements of a § 1981 claim in the employment context are the same as the elements of a Title VII claim. Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 843 n.11 (11th Cir. 2000).[1]

---

[1] We note that "relief under Title VII is available against only the employer and not against individual employees," so James cannot sustain a Title VII claim against McKinney. See Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006). But because that rule does not dispose of all of James' claims, we will proceed with the analysis.

III.

With respect to her race discrimination claims, James contends that Total Solutions' proffered reason for firing her — her purported performance problems — was pretextual. "[A] reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (quotation marks omitted).

The thrust of James' argument is that any mistakes she supposedly made should actually be attributed to Lewis and West. And she claims that McKinney knew that Lewis and West were responsible for the mistakes because McKinney was copied on all the relevant emails. But even if we discount entirely every mistake that occurred during the time James was backfilling, Total Solutions presented evidence of numerous errors that occurred before or after her backfill assignment. For example, James concedes that during her time as a program manager she "made a couple of mistakes on pay rates," which resulted in substantial wage underpayments and overpayments. In light of those mistakes and others cited by Total Solutions, as well as evidence of client complaints about James' performance, no reasonable jury could conclude that the proffered reason

6

for James' termination was false.[2] See id.  As a result, there was no genuine issue of material fact as to pretext, and summary judgment on James' racial discrimination claims was appropriate.  See Allen, 495 F.3d at 1313.

James next contends that the district court should not have entered summary judgment on her retaliation claims.  Those claims are also analyzed under the McDonnell Douglas framework.  Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002).  Total Solutions discussed James' EEOC charges with the CDC on two occasions.  The first discussion was justified by a legitimate, non-retaliatory reason:  Total Solutions' reasonable concern that James' role in contract management was prejudicing it in the bidding process.  Indeed, James herself admitted that, if she had played a part in awarding contracts, there would have been a conflict of interest.  "The inquiry into pretext centers upon the employer's belief" at the time it took the allegedly retaliatory action, so the fact that Total Solutions' concern turned out, in retrospect, to be unfounded does not mean that it proffered a "false" reason.  See Rioux v. City of Atlanta, 520 F.3d 1269, 1278 (11th Cir. 2008).  Accordingly, there was no genuine issue of material fact as to

---

[2] James argues that McKinney and another Total Solutions executive's testimony that the CDC complained about James' performance is inadmissible hearsay and should not be considered.  Not so.  The CDC's complaints are relevant because of their effect on Total Solutions — they contributed to Total Solutions' decision to fire James.  The truth of the complaints — whether the problems identified actually existed or were made up — is not important.  As such, the complaints were not hearsay.  See Fed. R. Evid. 801 (defining "hearsay" as statements "offer[ed] in evidence to prove the truth of the matter asserted") (emphasis added).

7

whether the reason proffered by Total Solutions for the first discussion was pretextual.  See Springer, 509 F.3d at 1349.

Total Solutions had a legitimate, non-retaliatory reason for the second discussion as well:  McKinney had been directed by her client, the CDC, to talk to Lester.  James did not present evidence that McKinney was not in reality told by the CDC to talk to Lester, nor did she present evidence showing that McKinney's real motive was, secretly, to retaliate against her.  As a result, James did not show that there was a genuine question of material fact as to whether Total Solutions' proffered reasons for its discussions were pretextual.  See id.  The district court did not err in granting summary judgment on James' retaliation claims.[3]

**AFFIRMED.**

---

[3] The district court also granted summary judgment on James' retaliation claims based on the alternative ground that James did not show that the disclosures were a "materially adverse" action under Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S. Ct. 2405 (2006).  Because we hold that there was no genuine issue of material fact as to pretext, we need not and do not reach that alternative ground.