10-2273-cv
Kuebel v. Black & Decker (U.S.) Inc.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

_____

August Term, 2010

(Argued: March 10, 2011       Decided: May 5, 2011)

Docket No. 10-2273-cv

_____

GREG KUEBEL, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant*,

SAVA GHICAS,

*Plaintiff*,

v.

BLACK & DECKER INC., UNITED STATES,

*Defendant-Appellee*.

Before:  B.D. PARKER, LIVINGSTON, and LYNCH, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Western District of New York (Telesca, *J.*) granting summary judgment for Defendant-Appellee on Plaintiff-Appellant's claims under the Fair Labor Standards Act and the New York Labor Law for wages allegedly owed to him by Defendant-Appellee, his former employer.

AFFIRMED in part, VACATED in part, and REMANDED.

_____

J. NELSON THOMAS, Thomas & Solomon LLP, Rochester, NY (Alan G. Crone, Kramer & Crone, PLC, Memphis, TN, *on the brief*), *for Plaintiff-Appellant*.

AMANDA C. SOMMERFELD, Winston & Strawn LLP, Los Angeles, CA, *for Defendant-Appellee*.

BARRINGTON D. PARKER, *Circuit Judge*:

Plaintiff-Appellant Greg Kuebel appeals from a judgment of the United States District Court for the Western District of New York (Telesca, *J.*) granting summary judgment for Defendant-Appellee Black & Decker (U.S.) Inc. ("B&D"). Kuebel sues on behalf of himself and other similarly situated current and former B&D employees, asserting three sets of claims under the Fair Labor Standards Act and the New York Labor Law. Principally, Kuebel asserts that B&D owes him compensation for (1) all of the time he spent commuting between home and the job site (the "commute time" claims), and (2) overtime hours that he allegedly worked but did not record (the "off-the-clock" claims). He also alleges that B&D fired him in retaliation for complaining about unpaid overtime (the "retaliation" claims). As explained below, we conclude that the district court properly granted B&D summary judgment on the commute time claims, but that Kuebel has raised genuine issues of material fact on his off-the-clock claims. We leave it to the district court to decide in the first instance whether to allow Kuebel to reassert his retaliation claims, which he abandoned below, in light of recent Supreme Court precedent. Accordingly, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

**BACKGROUND**

**The Parties**

B&D is a manufacturer of power tools, and sells its products in stores like Home Depot.[1] Kuebel was employed by B&D as a Retail Specialist from September 2006 to June 2007. Retail Specialists are assigned to particular Home Depot stores within a specified territory, and are responsible for B&D product merchandising and marketing at those stores. Kuebel was assigned to six Home Depot stores, ranging from twenty minutes to three hours from his home by car. As a Retail Specialist, he did not report to a central office, but rather used his home as a base. While he was employed by B&D, Kuebel also did merchandising work for three other companies.

**Kuebel's Job Duties**

Kuebel's primary responsibility as a Retail Specialist was to ensure that B&D products were properly stocked, priced, and displayed in his assigned Home Depot stores. His duties also included setting up B&D displays, training Home Depot sales employees, and assisting those employees in selling B&D products. B&D expected a Retail Specialist to spend five to eight hours per day completing these in-store activities.

Retail Specialists were required to use B&D-issued Personal Digital Assistants ("PDAs") to record entry and exit times at their assigned Home Depot stores. B&D refers to the amount of in-store time recorded by a PDA as "Beacon" hours. A Retail Specialist's Beacon hours were electronically communicated to his managers when he synchronized (synched) his PDA with

---

[1] Facts are undisputed unless otherwise indicated.

B&D's server. To synch his PDA, Kuebel plugged it into a cradle attached to his home computer. B&D expected Retail Specialists to synch their PDAs six times per week. Electronic records show that Kuebel typically synched his PDA five or six times per week, usually in the evening; that it almost always took him less than a minute to synch his PDA; and that it was not uncommon for him to synch his PDA fairly late at night, around 10:00 p.m.

In addition to synching his PDA, Kuebel performed several other tasks at his home office. These activities included reading and responding to company emails, checking voicemail, printing and reviewing sales reports, organizing "point-of-purchase" materials (e.g., fact tags for B&D products), making display signs, taking online training courses, and loading and unloading his car. B&D expected these "administrative" duties to take a Retail Specialist on average thirty minutes per day. Kuebel, however, testified that it took him thirty minutes to an hour to complete these at-home activities—fifteen to thirty minutes in the morning, before driving to his first Home Depot store of the day, and fifteen to thirty minutes in the evening, after returning home from his last store. B&D asserts that Kuebel was not required to perform all of these activities at home, or at any particular time of day. However, B&D does instruct Retail Specialists to record the time they spend working at home, and its policy is to pay them for that time.

**B&D's Commute Time Policy**

In 2004, B&D consulted with outside counsel regarding an appropriate compensation policy for time spent by field employees (like Retail Specialists) traveling to and from their job sites. In advising B&D, outside counsel relied on a January 29, 1999 opinion letter issued by the

Wage and Hour Division of the Department of Labor ("DOL"), which stated, in response to an inquiry concerning the compensability of field employees' travel time, that "[the DOL] would not take exception to a practice that treats one hour of commuting time as non-compensable home-to-work travel, and that treats all travel time in excess of that amount as hours worked," 1999 DOLWH LEXIS 9, at *6. In light of that letter, B&D implemented a policy of paying Retail Specialists for time spent driving to their first Home Depot store of the day and for time spent driving home from the last store of the day, to the extent that travel time represented travel in excess of sixty miles for either leg. Some managers, including Kuebel's, instructed their Retail Specialists that commute time to and from home was compensable to the extent it was for travel in excess of sixty minutes in duration, rather than sixty miles in length. Kuebel was compensated in accordance with that policy. For example, if he drove 2.5 hours from home to his assigned store in the morning, and 2.5 hours from that store back home at the end of the day, he was paid for three of those five hours of commuting time.

**B&D's Time Reporting Policies**

B&D's policies required Retail Specialists to accurately record their hours on timesheets that they submitted to their managers. In a January 2007 email sent to all employees, including Retail Specialists, B&D reiterated that employees were obligated to "[e]nsure that business records (for example, timecards . . . ) are honest, complete, and not misleading," and should "watch out" for "going along with the creation of inaccurate or misleading records"; the email also provided a phone number that could be used to anonymously report violations of these policies.

5

It is undisputed that there was no official written B&D policy that prohibited Retail Specialists from working, recording, and being paid for overtime. Indeed, the one time that Kuebel recorded overtime (a half hour), he was paid for it. However, B&D believed that Retail Specialists should be able to complete all of their in-store and administrative duties, as well as any compensable commute time, in a forty-hour workweek. B&D therefore "expect[s] Retail Specialists to manage themselves and budget their time for a 40-hour workweek." Appellee's Br. 11.

**Kuebel's Time Reporting Practices**

Kuebel alleges that it was not possible to complete all of his duties in forty hours per week and that, as a result, he frequently worked overtime. However, he did not record any overtime on his timesheets (except for the one occasion noted above), and thus was not paid for his alleged overtime. Kuebel testified at his deposition that when he worked more than forty hours in a week, he would shave his time entry for Friday so that his recorded hours for the week added up to only forty. He estimated that when he was reporting to his first supervisor (Uzo Idigo, from September 2006 to January 2007), 50% of his timesheets were false, and that when he was reporting to his second supervisor (Scott Davolt, from January 2007 to June 2007), 90% were false. In a subsequent declaration submitted in opposition to B&D's summary judgment motion, Kuebel averred that to the best of his memory, he worked more than forty hours "just about every week," and "averaged from one to five hours of uncompensated overtime every week."

6

Kuebel asserts that he falsified his timesheets because his supervisors instructed him not to record more than forty hours per week. He testified that at monthly meetings, "there was always a point that [Idigo] and Mr. Davolt and [another manager] would always indicate that we [Retail Specialists] were not to put more than forty hours on our time sheet," and that Davolt "told all of the reps that they were only to record forty hours a week, . . . no matter what they worked during that particular week." Kuebel further testified that during a personal discussion with Davolt on February 22, 2007, Davolt said to him, "you can't work overtime, you're only supposed to put forty hours on your timecard."

During that same discussion, Kuebel allegedly told Davolt that the forty hours appearing on his timesheets "was not accurate" because he was working more than forty hours per week, and Davolt responded, "you're only supposed to mark forty on your timecard because we can't afford overtime." According to Kuebel, he similarly complained to Davolt about uncompensated overtime on three occasions in May 2007. For example, he testified that on one occasion, he told Davolt that he was "working extra hours" but "still only putting forty hours on my time sheet per his instruction, and . . . didn't feel that was fair," and Davolt simply "avoided the topic." B&D disputes the notion that it was ever conveyed to Kuebel that he should falsify his timesheets so as not to record overtime.

During his employment with B&D, Kuebel was counseled multiple times by his supervisors regarding perceived performance issues—for example, low in-store Beacon hours and the unsatisfactory condition of his assigned stores. Davolt also apparently suspected that Kuebel would sometimes work for one of his other employers while on the clock for B&D. In

June 2007, B&D fired Kuebel on the grounds of poor performance, dishonesty, and falsification of company records.

**Proceedings Below**

Following his discharge, Kuebel sued B&D asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL").[1] In March 2008, Kuebel moved for conditional certification of an FLSA collective action pursuant to 29 U.S.C. § 216(b). B&D thereafter stipulated to conditional certification on the commute time issue, but not the off-the-clock issue. The parties agreed on the form of the notice, which was sent to all Retail Specialists, and 130 employees opted to join the action.

Following discovery, B&D moved for partial summary judgement and the district court granted B&D summary judgment on the commute time claims. *Kuebel v. Black & Decker (U.S.) Inc.*, No. 08-CV-6020, 2009 U.S. Dist. LEXIS 43846 (W.D.N.Y. May 18, 2009) ("*Kuebel I*"). The district court held that (1) as a general matter, B&D's practice of compensating commute time only in excess of one hour complied with the FLSA; (2) the administrative duties performed by Kuebel at home did not render the entirety of his commute time compensable because they

---

[1] The complaint does not specify the provisions of the New York Labor Law under which Kuebel is suing. The district court, apparently construing Kuebel's state-law wage claims as arising under Article 6 of the NYLL, stated that "the portions of the New York Labor Law relied upon by plaintiff do not depart substantially from the requirements of the FLSA," and concluded that its analysis under federal law therefore "applie[d] equally to the plaintiff's state law claims." *Kuebel v. Black & Decker (U.S.) Inc.*, No. 08-CV-6020T, 2010 U.S. Dist. LEXIS 46533, at *1, *2 n.1 (W.D.N.Y. May 12, 2010). The parties implicitly accept that conclusion on appeal and, like the district court, refer to federal law in analyzing Kuebel's claims. We will do the same. *See Reiseck v. Universal Comm'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010) (noting that NYLL mandates overtime pay in same manner as FLSA); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2. However, on remand, it should be clarified under which section(s) of the NYLL Kuebel's surviving off-the-clock claim is proceeding.

8

were not "integral and indispensable" to his "principal" job activities, and thus did not extend his workday to include his morning and evening commutes; (3) in any event, B&D had established a good-faith defense to liability under 29 U.S.C. § 259(a) by virtue of its reliance on the January 29, 1999 DOL opinion letter; and (4) because there was no evidence that any FLSA violation had been willful, a two-year statute of limitations applied, *see* 29 U.S.C. § 255(a). *Kuebel I*, 2009 U.S. Dist. LEXIS 43846, at *24-41. The court also denied Kuebel's request under Federal Rule of Civil Procedure 56(f) to defer consideration of B&D's motion and afford him further discovery on the issues of good faith and willfulness. *Id.* at *17-24.

Following that decision, B&D moved to send notice to the 130 opt-in plaintiffs that the collective action claims had been dismissed. Kuebel opposed that motion and, in addition, moved to send "supplemental notice" to the putative plaintiffs who had not opted into the action in 2008, advising them of the off-the-clock claims. While those motions were pending, B&D moved for summary judgment on Kuebel's remaining claims.

In 2010, the district court granted B&D summary judgment, dismissing Kuebel's complaint in its entirety. *Kuebel v. Black & Decker (U.S.) Inc.*, No. 08-CV-6020T, 2010 U.S. Dist. LEXIS 46533 (W.D.N.Y. May 12, 2010) ("*Kuebel II*"). The district court held that Kuebel (1) had failed to raise a genuine issue of material fact on his off-the-clock claims; (2) had failed to present evidence that any violation was willful, which meant that a two-year statute of limitations applied to the FLSA off-the-clock claim, and liquidated damages were not available under the NYLL; and (3) had abandoned his retaliation claims by not defending them in his

9

brief.  *Id.* at \*4-5, 30-56.[2]   Having determined that B&D was entitled to summary judgment, the district court denied the parties' pending notice motions as moot, and dismissed the case with prejudice.  *Id.* at \*56-57.  Kuebel appealed, challenging both the 2009 and 2010 summary judgment decisions.

**DISCUSSION**

We review a district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.  *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).  Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

**I.      Commute Time Claims**

Kuebel's commute time claims rest on a "continuous workday" theory.  He argues that he is entitled to compensation for all of his commute time because the administrative tasks he performed at home were integral and indispensable to his principal job activities, and that his workday therefore began and ended at home and encompassed his morning and evening drives between home and Home Depot store.  We disagree.  Even if Kuebel's at-home activities were

---

[2] Kuebel concedes that he abandoned his retaliation claims below, and does not attempt to defend them on the merits.  Instead, he requests in his briefing that we modify the district court's order, in light of the then-pending and now-decided case of *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011), to make the dismissal of those claims without prejudice.  Because we remand on another ground, we leave it to the district court to decide in the first instance whether to allow Kuebel to reassert his retaliation claims following the Supreme Court's abrogation of our precedent in this area.

10

integral and indispensable to his principal activities, they do not render the entirety of his commute time compensable under the FLSA.

A. **FLSA Framework: "Principal" Job Activities and the "Continuous Workday" Rule**

The FLSA "guarantee[s] compensation for all work or employment engaged in by employees covered by the Act." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602 (1944).  However, the statute does not define what constitutes compensable "work." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005).  After early Supreme Court cases defined the term "broadly," *id.*, Congress passed the Portal-to-Portal Act of 1947, 29 U.S.C. § 251 *et seq.*, which narrowed the FLSA's coverage by providing that compensable work does *not* include:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

The Supreme Court has since established that "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under § [254(a)]," and thus compensable under the FLSA even if performed before or after the regular shift. *IBP*, 546 U.S.

11

at 37; *see Steiner v. Mitchell*, 350 U.S. 247, 252-53 (1956).  Whether an activity is "integral and indispensable" to an employee's principal activities is a fact-dependent inquiry.  *See Reich v. N.Y.C. Transit Auth.*, 45 F.3d 646, 650 (2d Cir. 1995).

Pursuant to the DOL's "continuous workday rule, . . . the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'"  *IBP*, 546 U.S. at 29 (quoting 29 C.F.R. § 790.6(b)).  The rule "provides that '[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted.'"  *Singh v. City of New York*, 524 F.3d 361, 372 n.8 (2d Cir. 2008) (Sotomayor, J.) (quoting 29 C.F.R. § 790.6(a)); *see* 29 C.F.R. § 790.6(a) ("[T]o the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of [29 U.S.C. § 254(a)] have no application.").  In *IBP*, the Supreme Court held that the time spent by slaughterhouse employees before and after their shifts walking between their locker rooms—where they engaged in the principal activities of donning and doffing their protective gear—and the slaughterhouse floor was part of the continuous workday and therefore compensable under the FLSA.  546 U.S. at 37 ("[D]uring a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is . . . covered by the FLSA.").

12

**B.	Kuebel's At-Home Activities Did Not Extend His Workday Under the Continuous Workday Rule**

We need not and do not decide whether the district court correctly determined as a matter of law that the administrative tasks Kuebel performed at home were not integral and indispensable to his principal job activities. For, even if those tasks do qualify as integral and indispensable (and, thus, principal), they do not affect the compensability of Kuebel's driving time.

The parties' arguments about the Portal-to-Portal Act, and the regulations and cases interpreting it, are largely beside the point. Section 254(a) does not impose any liability on employers; it only *exempts* them from liability for certain activities that the Supreme Court had briefly imposed before the Portal-to-Portal Act overruled it. *See IBP*, 546 U.S. at 24-27. Other than this exemption, "the Portal-to-Portal Act does not purport to change" earlier definitions of compensable work. *Id.* at 28.

The general rule, however, is and always has been that the FLSA does not treat ordinary home-to-job-site travel as compensable. The regulations have reflected this fact for at least fifty years, instructing that "[n]ormal travel from home to work is not worktime." 29 C.F.R. § 785.35; 26 Fed. Reg. 190, 194 (Jan. 11, 1961). The fact that Kuebel performs some administrative tasks at home, on his own schedule, does not make his commute time compensable any more than it makes his sleep time or his dinner time compensable.

A helpful analogy is provided by 29 C.F.R. § 785.16. Although that regulation directly applies in the slightly different context of whether time spent waiting is compensable, *see* 29

13

C.F.R. § 785.14, several courts have relied in cases like this one on its instruction that "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked." 29 C.F.R. § 785.16(a). For example, in *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1060 (9th Cir. 2010), the Ninth Circuit held that a technician's evening commute was not rendered compensable merely because he performed the arguably principal activity of uploading data to his employer after returning home, because he was free to "make the transmission[] at any time between 7:00 p.m. and 7:00 a.m." Similarly, in *Ahle v. Veracity Research Co.*, 738 F. Supp. 2d 896, 917 (D. Minn. 2010), the court held that even if the plaintiff private investigators' pre- and post-surveillance activities—e.g., performing background checks and submitting reports—qualified as principal, that did not extend their workday to include the time spent driving to and from a surveillance site, since "Plaintiffs were not required to perform the activities . . . immediately prior to leaving for an investigation or immediately after returning home."

Similar reasoning applies here, as it cannot seriously be disputed that Kuebel had flexibility in deciding when to complete his daily administrative responsibilities of checking email, checking voicemail, synching his PDA, printing sales reports, making signs, and so forth.[3] The record indicates only that it might have been necessary to perform certain activities in the morning, or in the evening. It does not indicate that Kuebel was required to perform them immediately before leaving home, or immediately after returning home. Indeed, there is nothing

---

[3] The district court did not expressly rely on this reasoning, but "we may affirm on any basis for which there is sufficient support in the record, including grounds not relied on by the District Court." *Ferran v. Town of Nassau*, 471 F.3d 363, 365 (2d Cir. 2006) (per curiam).

14

in the record to suggest that a Retail Specialist could not, for example, wake up early, check his email, synch his PDA, print a sales report, and then go to the gym, or take his kids to school, before driving to his first Home Depot store of the day; nor was Kuebel prevented from leaving his last store of the day and going straight to a restaurant for dinner, or waiting until late at night to synch his PDA (as electronic records show he sometimes did). That Kuebel may have frequently chosen to perform his at-home activities immediately before and after his commutes does not mean that B&D must pay him for the first hour of those drives—time that was not part of his continuous workday and that was, in the end, "ordinary home to work travel" outside the coverage of the FLSA, 29 C.F.R. § 785.35. *See* U.S. Department of Labor, Wage and Hour Division, Opinion Letter, 1999 DOLWH LEXIS 9, at *4 (Jan. 29, 1999) (advising that time spent at home by a field employee "completing service or time allocation reports, checking voice mail, and checking e-mail" would not "make the home . . . a job site for purposes of counting . . . travel" as compensable work time).[4]

Because Kuebel's commute time claims fail on the merits, we need not reach whether B&D is entitled to a statutory good-faith defense, *see* 29 U.S.C. § 259(a), or whether any violation was willful, *see* 29 U.S.C. § 255(a). Nor do we find any abuse of discretion in the district court's denial of Kuebel's Rule 56(f) request for additional discovery. Accordingly, we affirm the grant of summary judgment for B&D on the commute time claims.

---

[4] Our holding does not affect the status of Retail Specialists' travel time between different Home Depot stores during the workday, which B&D properly treats as fully compensable under the FLSA. *See* 29 C.F.R. § 785.38 ("Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked.").

**II.     Off-the-Clock Claims**

We turn now to Kuebel's assertion that B&D owes him wages for overtime that he allegedly worked, but admittedly did not report, and conclude that the district court erred in granting B&D summary judgment on these claims.

**A.     Legal Standard**

To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008); *Grochowski v. Phoenix Constr. Corp.*, 318 F.3d 80, 87 (2d Cir. 2003). The parties dispute, however, the extent to which Kuebel must show the *amount* of his uncompensated work (in essence, his damages) in order to survive summary judgment. It is not a question that this Court has explicitly addressed. As explained below, the applicable standard requires that Kuebel must "produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687.

In *Anderson*, a special master had denied recovery because the amount of the plaintiff's uncompensated work could not be ascertained with sufficient definiteness. 328 U.S. at 684-85, 693. The court of appeals endorsed that determination and ordered that the action be dismissed, holding that "the burden rested upon the employees . . . to show by evidence rather than conjecture the extent of overtime worked, it being insufficient for them merely to offer an estimated average of overtime worked." *Id.* at 686. The Supreme Court reversed, concluding

16

that the special master and court of appeals had "imposed upon the employees an improper standard of proof." *Id.* The Court observed that "[w]hen the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records." *Id.* at 687. However, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," the Court concluded that "[t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work," as such a result would be contrary to the "remedial nature" of the FLSA. *Id.* Instead, the *Anderson* Court articulated the following standard:

> In such a situation . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 687-88.

Thus, at summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present "sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference," *id.* at 687. *See, e.g.*, *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455, 460 (5th Cir. 2009); *Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 594-98 (7th Cir. 2008); *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1315-18 (11th Cir. 2007); *Magnoni v. Smith &*

17

*Laquercia, LLP*, 661 F. Supp. 2d 412, 417-18 (S.D.N.Y. 2009). Consistent with *Anderson*, an employee's burden in this regard is not high. *See* 328 U.S. at 687 (remedial purpose of FLSA militates against making employee's burden an "impossible hurdle"). It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection. *See, e.g.*, *Canela-Rodriguez v. Milbank Real Estate*, No. 09 Civ. 6588 (JSR), 2010 U.S. Dist. LEXIS 98884, at *5 (S.D.N.Y. Sept. 20, 2010); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007); *Magnoni*, 661 F. Supp. 2d at 417-18.

Here, however, the district court determined that Kuebel was not entitled to *Anderson*'s lenient burden of proof. Relying on *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159 (W.D.N.Y. 2007), it held that because Kuebel was responsible for filling out his own timesheets and had admittedly falsified them, such that any inaccuracies were "self-created," a heightened standard applied under which Kuebel must "prove the amount of time he worked off-the-clock with specificity." *Kuebel II*, 2010 U.S. Dist. LEXIS 46533, at *32. Because Kuebel could not prove his damages with precision, the district court concluded that summary judgment was appropriate.

We disagree with this approach. First, it is important to recognize that an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable. *See* 29 U.S.C. § 211(c); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 944, 946 (2d Cir. 1959) (Friendly, J.) (rejecting as inconsistent with the FLSA an employer's contention that its employee was precluded from claiming overtime not shown on his own timesheets, because an employer "cannot . . . transfer his statutory burdens of accurate record keeping, and of

18

appropriate payment, to the employee" (citation omitted)); *see also Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998). In other words, once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours. Accordingly, the fact that an employee is required to submit his own timesheets does not necessarily preclude him from invoking *Anderson*'s standard where those records appear to be incomplete or inaccurate. *See Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1071 (N.D. Ill. 2005) ("The FLSA makes clear that employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by employees.").

At least where the employee's falsifications were carried out at the instruction of the employer or the employer's agents, the employer cannot be exonerated by the fact that the employee physically entered the erroneous hours into the timesheets. As the district court emphasized, Kuebel admits that it was he who falsified his timesheets, notwithstanding B&D's official policy requiring accurate recordkeeping. But his testimony—which must be credited at the summary judgement stage—was that he did so because his managers instructed him not to record more than forty hours per week. He specifically testified that at company meetings and during discussions with one of his supervisors, it was conveyed to him that he was not to record overtime no matter how many hours he actually worked. In other words, Kuebel has testified that it was *B&D*, through its managers, that caused the inaccuracies in his timesheets. While ultimately a factfinder might or might not credit this testimony, that is a determination for trial, not summary judgment. In sum, we hold that because Kuebel has presented evidence indicating

19

that his employer's records are inaccurate—and that although it was he who purposefully rendered them inaccurate, he did so at his managers' direction—the district court should have afforded Kuebel the benefit of *Anderson*'s "just and reasonable inference" standard. *See Allen*, 495 F.3d at 1317-18 (finding just and reasonable inference standard applicable at summary judgment where plaintiffs had not recorded overtime, but "testified that they were discouraged from accurately recording overtime work on their time sheets, and were encouraged to falsify their own records by submitting time sheets that reflected their scheduled, rather than actual, hours").[5] A contrary conclusion would undermine the remedial goals of the FLSA, as it would permit an employer to obligate its employees to record their own time, have its managers unofficially pressure them not to record overtime, and then, when an employee sues for unpaid overtime, assert that his claim fails because his timesheets do not show any overtime.

**B.      Application**

The district court also held that summary judgment was warranted even under *Anderson*'s more lenient standard, and because Kuebel had failed to raise a genuine factual issue as to whether B&D had actual or constructive knowledge of his off-the-clock work. We similarly disagree with these conclusions.

**1.      Kuebel Has Satisfied His Burden Under *Anderson***

---

[5] We need not address whether an FLSA plaintiff's intentional falsification of his time records would, under different circumstances, preclude him from benefitting from *Anderson*'s "just and reasonable inference" standard.

20

In our view, Kuebel has presented sufficient evidence for a reasonable jury to conclude that he has shown the amount of his uncompensated work "as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. For example, in his declaration, he estimates that he averaged one to five hours of uncompensated overtime each week, and he has also specifically described his method of shaving Friday's hours so that his weekly total did not exceed forty. While this evidence is not precise, Kuebel's burden under *Anderson* is, as noted above, not onerous. We conclude that he may be able, based on this evidence, to prove to a jury that he has met his burden under the *Anderson* test and thus to shift to B&D the burden of coming forward with evidence that either demonstrates the precise amount of work he performed or negates the reasonableness of the inference created by Kuebel's evidence as to the amount of that work.

In concluding that Kuebel had failed to meet this burden, the district court relied on an apparent inconsistency between Kuebel's deposition testimony and subsequent declaration: at one point in his testimony, Kuebel estimated that he falsified about 50% of his timesheets while reporting to his first supervisor and 90% while reporting to his second supervisor, whereas in his declaration, he estimates that he averaged one to five hours of uncompensated overtime "every week." While it is not clear from his testimony, Kuebel asserts on appeal that the 50% and 90% estimates referred to his *daily* (not weekly) timesheets, consistent with his alleged practice—which he also described during his testimony—of always counting his administrative duties as having taken only half an hour (allegedly as per his training), even though they often took longer, meaning that his recorded hours for days other than Friday were also frequently inaccurate. We conclude that whatever inconsistency may exist between the estimates offered

by Kuebel during his deposition and those provided in his declaration, it is at most "the type of inconsistency that the [defendant] should test through cross-examination at trial and allow the jury to weigh in determining the credibility of [the] plaintiff's testimony in support of his . . . claims." *Allen*, 495 F.3d at 1317.

Ultimately, the dispute as to the precise amount of Kuebel's uncompensated work is one of fact for trial. As stated above, a plaintiff establishes a violation of the FLSA by proving that he performed uncompensated work of which his employer was or should have been aware. The *Anderson* test simply addresses whether there is a reasonable basis for calculating damages, assuming that a violation has been shown. *Brown*, 534 F.3d at 596. It does not entitle an employer to summary judgment where the employee's estimates of his uncompensated overtime are somewhat inconsistent.

The district court further held that, in any event, the following evidence was sufficient to "negate the inference that [Kuebel] had performed work off-the-clock": (1) B&D's written policies and training materials stating that time worked must be accurately recorded; (2) Kuebel's own time records; and (3) Beacon reports for Kuebel showing low in-store hours. *Kuebel II*, 2010 U.S. Dist. LEXIS 46533, at *39-40. We disagree. B&D's evidence raises factual and credibility questions for trial, but it does not afford a basis for summary judgment. First, while the existence of B&D's official policies requiring accurate timekeeping may detract from Kuebel's credibility, it does not entitle B&D to judgment as a matter of law in light of Kuebel's testimony that he was instructed by his managers not to record all of his hours. Second, that Kuebel's timesheets do not show any overtime does not resolve the central question

22

necessitating a trial, which, as we have seen, is whether Kuebel worked overtime but did not record it at his managers' behest. Finally, to the extent that Kuebel's Beacon hours—or, for that matter, his manager's testimony that the condition of his stores was often subpar—suggest that Kuebel typically worked *less* than forty hours a week, such evidence also raises a factual issue for trial.

**2. Kuebel Has Raised a Triable Issue as to Whether B&D Knew or Should Have Known He Was Working Overtime**

To prevail on his off-the-clock claims, Kuebel also must prove that B&D had actual or constructive knowledge that he was performing uncompensated work. *See Chao*, 514 F.3d at 287-88; *Holzapfel*, 145 F.3d at 524; 29 C.F.R. §§ 785.11-13; *see also Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (explaining that knowledge affords an employer the opportunity to comply with the FLSA). At summary judgment, Kuebel need not demonstrate exactly "how much" off-the-clock work was performed with B&D's knowledge. *Contra Kuebel II*, 2010 U.S. Dist. LEXIS 46533, at *42-43.

We conclude that Kuebel has raised a genuine issue of material fact as to whether B&D knew he was working off the clock. Kuebel testified that on several occasions, he specifically complained to his supervisor, Davolt, that he was working more than forty hours per week but recording only forty. The district court discounted Kuebel's testimony, relying on the fact that he never lodged a formal complaint using B&D's anonymous reporting hotline. Id. at *44-45.

23

But while that fact might conceivably hurt Kuebel's credibility at trial, it does not warrant summary judgment for B&D.[6]

###   C.   Willfulness and Liquidated Damages

The district court held that Kuebel had failed to raise a genuine issue as to whether B&D's alleged nonpayment of overtime was "willful," such that a two-year statute of limitations applied to the FLSA off-the-clock claim, and liquidated damages were not available under the NYLL. Because we conclude that Kuebel has raised a question of fact as to whether B&D acted willfully, we vacate both determinations.[7]

The statute of limitations for an FLSA claim is two years, unless the violation is "willful," in which case it is three years. 29 U.S.C. § 255(a). "An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). We review the district court's willfulness determination de novo. *Id.*

Viewing the record in the light most favorable to Kuebel, B&D was aware that Retail Specialists' responsibilities would push them very close to, if not over, the forty-hour threshold,

---

[6] Because we are remanding for further proceedings on the off-the-clock claims, we need not reach Kuebel's argument, based on *Prickett v. Dekalb County*, 349 F.3d 1294 (11th Cir. 2003) (per curiam), that the district court erred in dismissing the entire action without affording the opt-in plaintiffs an opportunity to prosecute off-the-clock claims against B&D. As this case proceeds, the district court may well have the occasion to consider this subject in the first instance.

[7] Kuebel also asserts on appeal that the district court abused its discretion in holding that the expert report he submitted in support of his willfulness argument was inadmissible because it consisted largely of legal conclusions. *See Kuebel II*, 2010 U.S. Dist. LEXIS 46533, at *45-51. Having considered the report, we cannot conclude that the district court's decision to exclude it was an abuse of discretion.

and three of Kuebel's managers conveyed to him that he should do what it takes to finish the job, but not record any overtime. If a jury found such evidence to be credible, it might reasonably conclude that B&D willfully violated the FLSA. Accordingly, the question of willfulness for FLSA statute of limitations purposes is properly left to trial.

Finally, we conclude that the district court's determination that liquidated damages are not available under the NYLL was similarly premature. Pursuant to the version of NYLL § 198(1-a) in effect during Kuebel's time at B&D, Kuebel is entitled to liquidated damages equal to 25% of the total amount of wages due if B&D's failure to pay him was "willful." N.Y. Lab. Law § 198(1-a) (McKinney 2008); *see Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 264 (2d Cir. 1999).[8] The district court reasonably concluded, and the parties do not contest, that the NYLL's willfulness standard "does not appreciably differ" from the FLSA's willfulness standard. *Kuebel II*, 2010 U.S. Dist. LEXIS 46533, at \*55-56; *accord*, *e.g.*, *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 340-41 (S.D.N.Y. 2005); *Moon v. Kwon*, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002) (Lynch, J.). Accordingly, the question of whether Kuebel can recover liquidated damages under the NYLL is properly left for trial for the same reasons discussed above.

**CONCLUSION**

For the foregoing reasons, the district court's grant of summary judgment for B&D on the commute time claims is AFFIRMED, the grant of summary judgment for B&D on the off-the-

---

[8] Section 198(1-a) was amended in 2009 and 2010, and now provides that an employee who prevails on a wage claim is entitled to liquidated damages equal to 100% of the amount of wages found to be due "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a) (McKinney 2011); *see also id.* § 663(1).

clock claims is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.