23-676-cv
*Kinney v. Public Consulting Group*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of August, two thousand twenty-four.

PRESENT:
> BARRINGTON D. PARKER, JR.,
> DENNY CHIN,
> JOSEPH F. BIANCO,
> *Circuit Judges.*

---

JOSEPH KINNEY, on behalf of himself and all others similarly situated,

> *Plaintiff-Appellant*,

v.                                                        23-676-cv

PUBLIC CONSULTING GROUP, LLC, STAFFING SOLUTIONS ORGANIZATION, LLC,

> *Defendants-Appellees*.

---

FOR PLAINTIFF-APPELLANT:              ISAAC RAISNER (Jack A. Raisner, René S. Roupinian, *on the brief*), Raisner Roupinian LLP, New York, New York.

FOR DEFENDANTS-APPELLEES:          ISAAC J. BURKER, Jackson Lewis P.C., White Plains, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Edgardo Ramos, *Judge*).

**UPON DUE CONSIDERATION, IT IS HERBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on March 21, 2023, is **AFFIRMED**.

Plaintiff-Appellant Joseph Kinney appeals from the district court's award of summary judgment in favor of Defendants-Appellees Public Consulting Group ("PCG") and its wholly-owned subsidiary Staffing Solutions Organization ("SSO") (together, "Defendants").

Defendants managed a virtual call center pursuant to a contract with the New York State Department of Health ("NYS DOH") as part of the state's Contact Tracing Initiative (the "Initiative"), which sought to stop the spread of COVID-19 by informing individuals of potential exposure to the virus. PCG hired Kinney as a contact tracer on October 27, 2021. However, on February 24, 2022, Kinney and hundreds of other employees were informed that they would be terminated the next day, February 25. Kinney brought claims on behalf of himself and a putative class of employees under the federal and New York Worker Adjustment and Retraining Notification ("WARN") Acts, *see* 29 U.S.C. §§ 2101 *et seq.*; N.Y. Lab. Law §§ 860 *et seq.*, alleging that Defendants did not give him and other former employees sufficient notice of the impending terminations. The district court granted summary judgment in favor of Defendants on the grounds that Kinney's employment in connection with the Initiative fell under WARN's statutory exemption for temporary projects. *Kinney v. Pub. Consulting Grp., Inc.*, No. 22-CV-2458 (ER), 2023 WL 2586277 (S.D.N.Y. Mar. 21, 2023).

On appeal, Kinney argues that: (1) his employment was subject to WARN's notification requirements because it does not qualify for the temporary project exemption under 29 U.S.C. § 2103(1); and (2) the district court abused its discretion by prematurely granting summary

2

judgment on an affirmative defense without providing Kinney an opportunity to conduct discovery. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

"We review a district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011). "Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *O&G Indus., Inc. v. Nat'l R.R. Passenger Corp.*, 537 F.3d 153, 159 (2d Cir. 2008) (alteration adopted) (internal quotation marks and citation omitted).

The federal WARN Act generally requires an employer to give its employees sixty days' advance written notice of any plant closing or mass layoff. 29 U.S.C. § 2102(a). However, the Act "shall not apply to a plant closing or mass layoff if . . . the closing is of a temporary facility or the closing or layoff is the result of the completion of a particular project or undertaking, and the affected employees were hired with the understanding that their employment was limited to the duration of the facility or the project or undertaking." 29 U.S.C. § 2103(1). With respect to employment pursuant to a specific contract or work order placed with the employer, the regulations state that "[w]hether such jobs are temporary depends on whether the contract or order is part of a long-term relationship" because, under that circumstance, there is "the expectation that [the] contract will continue to be renewed during the foreseeable future." 20 C.F.R. § 639.5(c)(4). The parties agree that the New York WARN Act contains an identical exemption for temporary employment and otherwise mirrors the federal WARN Act for all purposes relevant to this appeal. *See* N.Y. Lab. Law § 860-c(1)(c). As set forth below, we conclude that the uncontroverted facts

3

demonstrate that there was no violation of the federal or New York WARN Acts because Kinney's termination for temporary project-based work fell within the statutory exemption and, thus, the district court properly granted summary judgment in favor of Defendants.

First, the undisputed evidence shows that Kinney was "hired with the understanding that [his] employment was limited to the duration of the . . . project." 29 U.S.C. § 2103(1). More specifically, the WARN Act requires that, to qualify for the exemption,

> [e]mployees must clearly understand at the time of hire that their employment is temporary. When such understandings exist will be determined by reference to employment contracts, collective bargaining agreements, or employment practices of an industry or a locality, but the burden of proof will lie with the employer to show that the temporary nature of the project or facility was clearly communicated should questions arise regarding the temporary employment understandings.

20 C.F.R. § 639.5(c)(2).

Here, the record shows that PCG clearly communicated to Kinney at the time of hiring that his employment was temporary and project-based. Kinney's offer letter twice described his employment with the Initiative as "temporary" and stated that "[t]he expected duration of this assignment is until December 2021, but that may change according to the needs of the project and does not otherwise affect your 'at will' status." Joint App'x at 25. Additionally, Kinney admitted in his affidavit that his communications with Defendants "at the time of [his] hire led [him] to understand that [his] employment would end when the Initiative concluded," and that his employee handbook stated that, "[w]hen the project concludes, as determined by the New York Department of Health, the employees hired for the purpose of this project will be terminated from employment." Joint App'x at 43–44. Even though Kinney argues that he eventually came to understand that the Initiative would continue for the foreseeable future after learning of previous contract extensions, that assertion does nothing to undermine the uncontroverted evidence that the

4

employer clearly communicated at time of hiring the temporary nature of both the Initiative and Kinney's employment in connection with it.

Kinney also contends that the exception does not apply for the additional reason that the Initiative was not a "particular project" involving temporary work within the meaning of the WARN Act, because Defendants and NYS DOH extended the original contract four times. Although the parties executed the original Consultant Agreement for a one-year period from May 13, 2020 through May 12, 2021, their contractual relationship did not conclude until June 2022.[1] On account of these extensions, Kinney analogizes his work to seasonal or as-needed employment, which fall within WARN's notification requirements. His argument draws heavily from nonbinding Department of Labor ("DOL") guidance advising that workers in the trucking industry "who are hired on an 'as needed' basis when freight volumes increase and are laid off indefinitely subject to recall" are still protected by WARN because "while their work may be temporary," they are not "working on a temporary project, which is a distinct undertaking [and] not simply an increase in already existing and continuing work." 54 Fed. Reg. 16,042, 16,056 (Apr. 20, 1989). Kinney thus argues that his work in connection with the Initiative constituted "as-needed" employment, rather than temporary project-based work. We disagree.

Here, the contractual extensions do not undermine the nature of the Initiative as a defined undertaking by Defendants and NYS DOH to slow the contagion of COVID-19. The uncontroverted record demonstrates that the Initiative's contracts were renewed *ad hoc* pursuant to the vagaries of New York's pandemic response in late 2021 and early 2022, rather than as part of some recurring employment on an as-needed basis. As New York Governor Kathy Hochul

---

[1] In March 2021, the parties extended the contract's end date to August 31, 2021; in July 2021, they extended it a second time to December 31, 2021; in October 2021, they extended it a third time to March 31, 2022; and finally, in March 2022, the parties extended the contract through June 30, 2022.

explained in January 2022, the state's approach to combatting COVID-19 did "not [involve] long-term strategies" but rather "short-term" responses that would give the state "the flexibility to adapt and adjust" to the evolving public-health emergency. The unpredictability of the virus, its mutations, and transmission rates, explains why the Defendants and the NYS DOH pursued those short-term extensions. Joint App'x at 146. It explains also the evolving nature of Kinney's responsibilities during the course of his temporary employment. Kinney, who began as a contact tracer in late October 2020 but transitioned to case-investigation work in January 2021, attested in his affidavit that he "understood that the shift from contact tracing toward more case investigation was related to the surge of Omicron COVID-19 cases that occurred in December 2021." Joint App'x at 45. Accordingly, there is no genuine dispute of material fact that the short-term extensions were consistent with a defined, temporary undertaking whose precise endpoint could not have been predicted at the inception of the employment relationship.

We are similarly unpersuaded by Kinney's contention that the exemption does not apply even if the Initiative was a temporary project on the theory that his layoff was not "the result of the completion of" the Initiative. 20 C.F.R. § 639.5(c)(1). In other words, Kinney asserts that because his termination in late February 2022 preceded the Initiative's formal completion in June 2022, he should have been afforded notice of termination.

However, the uncontroverted evidence demonstrates that PCG executed the February terminations because it knew the Initiative was concluding. The Consultant Agreement between Defendants and the NYS DOH stated that Defendants would manage the Initiative's contact tracing efforts "at the direction of" the NYS DOH. Joint App'x at 196. In January 2022, the Governor explained in a press release that contact tracing was becoming obsolete as a method to combat the pandemic because the sheer volume of cases made it "almost impossible [to] contact trace in the

6

way we have in the past," and that the Omicron variant's "very short window for intervention to disrupt transmission" rendered contact tracing ineffective. Joint App'x at 149. Shortly after this announcement, on February 4, the NYS DOH informed PCG that it should begin winding down the Initiative. Accordingly, Dale McCourt, a PCG employee, stated in his affidavit that PCG and the NYS DOH entered into the final extension "for the purpose of providing sufficient time to finalize the winddown of the Initiative's operations" after the NYS DOH had already decided to cancel it. Joint App'x at 188. In addition, Tina Allen, a former employee of SSO who worked on the Initiative, stated in her declaration that "[b]y the time that the February 24, 2022 layoffs were announced on February 11, 2022, the [NYS DOH] had already informed PCG and SSO that the Initiative would be concluding by the end of April 2022 . . . that SSO should begin scaling back its workforce for the purpose of ending the Initiative within that timeframe," and that "SSO implemented the February 25, 2022 layoffs as part of its winddown of operations on the Initiative." Joint App'x at 153–54.

Kinney fails to point to anything in the record to contradict the evidence establishing that the final contract extension was effectuated solely to allow the Initiative's work to come to completion. Indeed, Defendants' communications to Kinney and other employees fully aligned with the Governor's public rationale for ending the Initiative. For instance, the termination alert Kinney received in February stated that the Initiative had seen a "decline in cases" and that, as such, the "volume of work for [its] staff ha[d] decreased." Joint App'x at 31. The letter also stated that "[t]he goal of this reduction is to right-size the [virtual call center] workforce to address current and future needs." Joint App'x at 31. Furthermore, the March termination alert to the remaining employees explained that "[d]ue to the continuing decline in cases and contacts and to align with CDC guidance, the NYS DOH is taking steps to conclude the statewide universal contact tracing

7

program no later than May 2022." Joint App'x at 33. In light of these uncontroverted facts, no reasonable jury could find that the March 30 contract extension was anything other than "for the purpose of providing sufficient time to finalize the winddown of the Initiative's operations." Joint App'x at 188. Because Kinney was "hired with the understanding that [his] employment was limited to the duration of the" Initiative, and his termination was effected pursuant to the Initiative's completion, the temporary employment exemption of the WARN Act applies. 20 C.F.R. § 639.5(c)(1).

Finally, we find no abuse of discretion by the district court in awarding summary judgment to Defendants on a WARN affirmative defense in advance of discovery where, as here, the party resisting the motion fails to file a Rule 56(d) affidavit. Federal Rule of Civil Procedure 56(d) states that "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: defer considering the motion [for summary judgment] or deny it; allow time to obtain affidavits or declarations or to take discovery; or issue any other appropriate order." Fed. R. Civ. P. 56(d). Such an affidavit should "explain (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995). Binding precedent makes unmistakably clear that Kinney's failure to file a Rule 56(d) affidavit is "fatal" to his claim, even if he "alluded to a claimed need for discovery" in a memorandum of law or some other filing. *Gurary v. Winehouse*, 190 F.3d 37, 43-44 (2d Cir. 1999). Accordingly, the district court acted well within its discretion in granting summary judgment without discovery.

     *      *      *

  We have considered Kinney's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

            FOR THE COURT:
            Catherine O'Hagan Wolfe, Clerk of Court